

**KILPATRICK STOCKTON LLP**
Joseph Petersen (JP-9071)
Christopher S. Lick (CL-1391)
31 West 52nd Street
14th Floor
New York, NY 10019
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

Attorneys for Plaintiff Lipper Inc.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIPPER INC.,<br><br>                      Plaintiff,<br><br>- against -<br><br>PLAN TOOLS, LLC and THE McHENRY GROUP, LLC,<br><br>                      Defendants. | 07 Civ. _____<br><br>**COMPLAINT** |

Plaintiff Lipper Inc. ("Lipper"), by its attorneys Kilpatrick Stockton LLP, for its complaint against defendants Plan Tools, LLC ("PlanTools") and The McHenry Group, LLC ("McHenry Group"), alleges upon knowledge as to its own acts and upon information and belief as to all other matters, as follows:

### NATURE OF THE CASE

1.     This is an action for breach of contract and declaratory judgment. Lipper's claims against PlanTools arise out of Plan Tools' refusal to comply with its post-termination obligations in accordance with the parties' contract and its unauthorized use of Lipper's copyrighted works to offer products and services in competition with Lipper. As a direct consequence of PlanTools' wrongful conduct, Lipper has lost profits and is being irreparably injured. This action seeks to

recover damages from PlanTools for the harm its actions have already caused and to stop PlanTools from causing further harm in the future. Lipper seeks a declaratory judgment against Plan Tools' parent entity, McHenry Group, arising out of McHenry Group's actions related to the parties' contracts. Lipper seeks the Court's declaration that Lipper does not owe sums that McHenry Group claims are due because Lipper did not agree to McHenry Group's proposal and McHenry Group has not performed as would have been required for such payment.

**PARTIES, JURISDICTION, AND VENUE**

2.      Plaintiff Lipper Inc. is a corporation organized and existing under the laws of the State of Colorado, with a principal place of business in New York, New York.

3.      Defendant Plan Tools, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business in Emeryville, California.

4.      Defendant The McHenry Group is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business in Emeryville, California.

5.      This Court has jurisdiction under 28 U.S.C. § 1332(a), in that the amount in controversy exceeds $75,000 and this action is between citizens of different states. The Court also has supplemental jurisdiction over Lipper's state law claims under 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over PlanTools because PlanTools transacts business in this State, entered into a contract with Lipper in this State, and further agreed that the contract would be enforced in this State.

7.      This Court has personal jurisdiction over McHenry Group because it transacts business in this state and entered into a contract with Lipper enforceable in this state.

8.      Venue is proper in this district because a substantial part of the events or

2

omissions giving rise to Lipper's claims occurred in this district.

## FACTS

*The Parties*

9.     Lipper is the world's leading provider of mutual fund intelligence, having provided comprehensive and objective information on funds and fund markets for over thirty years. Lipper delivers premium-quality information, analytical tools, and perspective to fund companies, financial intermediaries, media, and individual investors throughout the United States, Europe, and Asia, and provides research and analysis on more than 140,000 funds, domiciled in 45 countries, with assets in excess of $10 trillion.

10.     Lipper has long been recognized as a premier provider of information, tools, and **services for the investment community.**  Thousands of international fund companies and financial advisors rely on Lipper for timely information and industry insight through its specialized products and services. Lipper's fund data and analysis also reach millions of individual investors everyday through newspapers, financial publications, and the Internet.

11.     In 2006, Lipper identified the need for a web-based program to assist financial advisors and retirement product advisors in providing insight to make unbiased recommendations to retirement plan fiduciaries in connection with funds for the retirement plans (the "Retirement Insight Concept").  Lipper envisioned combining its data, fund analysis, report generation and relationship management tools into a single program that would enable financial advisors to research, recommend and monitor funds based on specific unique standards and criteria and to provide customized reporting with fund analysis and portfolio comparisons.

12.     Lipper engaged PlanTools to assist in the development of software for Lipper's Retirement Insight Concept.

13.     PlanTools develops software and provides hosted technology solutions to brokers,

3

banks and other financial institutions. Among PlanTools' products is the PlanTools Risk Management Service ("PTRMS"), a web-based fiduciary risk management and reporting tool that provides the ability to create customized investment policy statements.

*PlanTools' Agreement with Lipper*

14.    In or around August 2006, Lipper and PlanTools executed a Data Distribution Agreement ("DDA") pursuant to which Lipper agreed to supply fund information to PlanTools for resale by PlanTools via its PTRMS service, and PlanTools agreed to pay Lipper a revenue-share based on the sale of subscriptions to Lipper's fund information via PTRMS. A true and correct copy of the Data Distribution Agreement is attached hereto as Exhibit 1.

15.    PlanTools agreed to account for the revenue share due Lipper under the DDA by providing written reports within ten days after the end of each calendar quarter identifying:

(A)    the name and details of each Client and the Client's subscription to PlanTools Service and the number of user accesses issued to the Client;

(B)    a statement of fees collected from each Client on account of the Lipper Data;

(C)    a statement identifying the name of each Client who has cancelled its subscription to the PlanTools Service and the month in which such cancellation took effect;

(D)    a statement of Fees, owed to Lipper as calculated in accordance with the DDA.

16.    In or about August 2006, Lipper entered into a Master Consultant Agreement with PlanTools to develop, maintain and host the Lipper Toolkit, a unique program that would include both a new version of PTRMS, enhanced to Lipper's requirements and specifications, and Lipper's Retirement Insight Concept (the "MCA").

17.    The MCA is comprised of several separate agreements, including without limitation, the Master Consulting Agreement, true and correct copies of the cover, first and

4

signature pages are attached hereto as Exhibit 2,[1] and Work Statement No. 1, a true and correct copy of which is attached hereto as Exhibit 3.

18.    Under the MCA, PlanTools agreed to remit 25% of all revenues collected by PlanTools in connection with PTRMS subscriptions less referral fees paid by PlanTools to Third-Party pursuant to a written referral agreement.

19.    For Services rendered by PlanTools under the MCA, Lipper has made payments to PlanTools totaling six-hundred and seventy five thousand dollars ($675,000).

20.    In accordance with the MCA, Lipper provided to PlanTools Lipper's proprietary databases and information for incorporation into the Lipper Toolkit.

21.    In or about March 2007, PlanTools completed development of the core components of the Lipper Toolkit.

22.    Pursuant to the MCA, Lipper has the exclusive right to brand and market the Lipper Toolkit.

23.    Lipper began commercializing the Lipper Toolkit under the brand name LIPPER RETIREMENT INSIGHT on or about March 2007.

24.    Lipper has been actively negotiating agreements with potential customers of the **Lipper Toolkit.**   As of the filing of this Complaint, Lipper has secured a signed written agreement from one customer for the Lipper Toolkit and is in negotiations with several other potential customers who have indicated that they are ready to enter subscription agreements with Lipper.

***PlanTools' Copyright Infringement***

25.    Pursuant to Paragraph 5.01 of the MCA, Lipper owns all right, title and interest in

---

[1] Lipper is constrained at this stage to submit only a partial copy of the MCA because the MCA, stamped "CONFIDENTIAL", is subject to certain confidentiality restrictions set forth in the MCA.

USADMIN 9222396.5

all of the Lipper Toolkit's Work Product, defined in the MCA as:

> all work product created, conceived, developed or first reduced to practice by
> [PlanTools], either solely or in collaboration with others, including without
> limitation, designs, inventions, improvements, processes, computer programs,
> graphics, pictorial representations, user interfaces, functional specifications,
> reports spreadsheets, presentations [computer program or components and its
> associated operator and user manuals and training materials for use in conjunction
> with same] and analyses, that arises directly or indirectly out of [PlanTools']
> provision of the [services provided by PlanTools under the Agreement] or any
> tasks assigned to [PlanTools] by or on behalf of [Lipper] pursuant to this
> Agreement.

26.    Under Paragraph 5.02 of the MCA, PlanTools acknowledged specifically that it

had assigned copyrights in Work Product to Lipper.

27.    In addition to Paragraph 5 of the MCA, Paragraph 4 of Work Statement No. 1

confirms Lipper's ownership of intellectual property rights.  Paragraph 4 provides in part:

> With respect to the Lipper Toolkit Product/Service, the "look and feel," design
> requirements documents, business rules, in whole or in part, any data collected on
> behalf of [Lipper] during the development of the Lipper Toolkit Product/Service,
> and any data stored by [PlanTools] specifically for the purposes of configuring or
> operating the Lipper Toolkit shall be deemed [intellectual property owned by
> Lipper.]

28.    Paragraph 4 of Work Statement No. 1 also provides that Lipper owns the source

code and all rights therein for the Lipper Toolkit's Graphic User Interface, Active Server Pages,

Database Schema, Structured Query Language Code, and all other source code developed

exclusively for the Lipper Toolkit.

29.    In or about May, 2007, Lipper learned that PlanTools was, without its

authorization, marketing an enhanced version of PTRMS that incorporates source code and other

materials owned exclusively by Lipper (the "Enhanced PTRMS").

30.    PlanTools has positioned the Enhanced PTRMS to compete directly with the

Lipper Toolkit.

31.    The source code and materials developed for the Lipper Toolkit embody

6

copyrightable material subject to the protection of the United States Copyright Laws. Under the MCA, Lipper is the sole and exclusive owner of all right, title, and interest in and to the copyrights in such source code and materials.

32.    PlanTools has had access to and copied the source code specifically developed for the Lipper Toolkit under Work Statement No. 1 and compilations and other materials provided for the Toolkit and have used such materials or derivatives thereof in the Enhanced PTMRS.

33.    PlanTools' use of Lipper's source code and other materials in the Enhanced PTRMS is an infringement of Lipper's copyright.

34.    As a result of the PlanTools' acts of infringement alleged herein and in accordance with Paragraph 504(b) of the Copyright Act, 17 U.S.C. § 504(b), upon obtaining copyright registrations, Lipper will be entitled to recover from PlanTools the damages it has sustained and will sustain, and any profits obtained by PlanTools as a result of or attributable to the infringement. Further, in accordance with Paragraph 502 of the Copyright Act, 17 U.S.C. § 502, Lipper will be entitled to injunctive relief to prevent PlanTools from continuing to infringe Lipper's copyright.

*Termination of the Agreement*

35.    During the development and marketing of the Lipper Toolkit, it became clear that PlanTools lacked the sophistication and professionalism that Lipper and its customers required in order for Lipper to rely on PlanTools on an ongoing basis. Lipper was particularly concerned about PlanTools' infringement of Lipper's copyrights.

36.    In or about June, 2007, Lipper determined that it was in its best interest to sever the relationship with PlanTools and terminate the Agreement.

37.    The Master Consulting Agreement, Paragraph 12.01, provides that a party may terminate the Agreement as follows:

7

Either [PlanTools] or [Lipper] may terminate a Work Statement at any time by giving the other written notice of termination, whereupon this Agreement shall terminate on the effective date specified in such notice. Such date shall, in the case of notice given by [Lipper] be the date set forth in such notice and shall, in the case of a notice given by [PlanTools], be no earlier than the date on which all assignments under the Work Statement shall, in [Lipper's] reasonable discretion, have been fully completed.

38.    In accordance with Paragraph 12.01 of the MCA, termination of a work statement also terminates the MCA.

39.    On or about June 13, 2007, Lipper provided PlanTools written notice of termination of Work Statement No. 1 (the "Termination Letter"), thereby terminating the MCA. A true and correct copy of the Termination Letter is attached hereto as Exhibit 4.

40.    Under Paragraph 12.04 of the MCA and Paragraph 9 of Work Statement No. 1, upon termination, PlanTools is required to:

(a)    subject to sub-section (e) below, purge all application and services, data and Documentation [defined in the Agreement], including without limitation, contact information, and so certify to [Lipper] in writing;

(b)    provide to [Lipper] the latest released version of the source code, as described in this Agreement or a Work Statement that constitute Work Product and/or [Lipper's intellectual property];

(c)    provide to [Lipper] all of the latest work in progress and released version of any source code, Active Server Pages, Database Schema and SQL Code and Documentation that are not [Lipper's intellectual property] (together the "[PlanTools] Code"), as may be reasonably requested by [Lipper] for successful migration of the Lipper Toolkit and related services and applications outside of [PlanTools'] environment;

(d)    grant [Lipper] a non-exclusive, unlimited use, worldwide non-revocable, perpetual license to use those portions of the [PlanTools] Code and [intellectual property] that belong to [PlanTools] in order to operate, host, support and sell the Lipper Toolkit and related services and applications outside of [PlanTools'] environment and independent of [PlanTools]; and

(e)    provide adequate support to effectively transfer and operate the Lipper Toolkit and related services and application outside of [PlanTools'] environment including, without limitation providing technical transition support, including Documentation.

8

41.    In accordance with Paragraph 9 of Work Statement No. 1, upon termination of Work Statement No. 1, PlanTools is also required to refund to Lipper $375,000, less 50% of any amounts actually collected by Lipper under subscription agreements for the Lipper Toolkit and less commission paid to PlanTools by Lipper.

42.    As of the date of termination of the Agreement, Lipper had not yet collected any money under subscription agreements for the Lipper Toolkit.

43.    As of the date of termination of the Agreement, Lipper had not paid and did not owe PlanTools any commissions related to subscription agreements for the Lipper Toolkit.

***PlanTools' Refusal to Comply With Its Post-Termination Obligations***

44.    PlanTools has admitted that Lipper has the right to terminate the Agreement without cause and that Lipper's Termination Letter effectively terminated the Agreement.

45.    PlanTools has, however, refused to comply with its contractually mandated post-termination obligations. PlanTools has refused to: i) provide Lipper the Lipper Toolkit source code; ii) provide the latest work in progress and released source code reasonably necessary to migrate the Lipper Toolkit and related services and applications from PlanTools' environment; iii) grant Lipper a non-exclusive, non-revocable perpetual license to use those portions of PlanTools owned source code and intellectual property that is part of the Lipper Toolkit; and iv) refund Lipper $375,000 (collectively, the "Post Termination Obligations").

46.    Rather than comply with its Post-Termination Obligations, PlanTools has conditioned its compliance on the parties' entry of an overall termination agreement, imposing terms and conditions nowhere provided in the parties' MCA.

47.    As part of the conditions to PlanTools' compliance, McHenry Group has also insisted that it be paid $45,000 under a marketing proposal that it had submitted to Lipper in

March 2007 in connection with the Lipper Toolkit. A true and correct copy of the McHenry Group's marketing proposal is attached hereto as Exhibit 5.

48.    Lipper did not execute McHenry Group's proposal and, in any event, McHenry Group has not performed the obligations that it undertook in its own proposal.

49.    Lipper and PlanTools have communicated as required under the dispute resolution provisions in the Agreement in an effort to resolve their dispute without litigation. The parties have not resolved their dispute.

50.    Lipper has complied with all of its pre-termination and post-termination obligations under the MCA, including the MCA's prerequisites to instituting this suit.

***The Effect of PlanTools' Refusal to Comply With its Post-Termination Obligations***

51.    Lipper is actively marketing and attempting to sell the Lipper Toolkit.

52.    The Lipper Toolkit, marketed under the brand name LIPPER RETIREMENT INSIGHT, is heavily advertised on Lipper's website located at <www.lipperweb.com>.

53.    Lipper's LIPPER RETIREMENT INSIGHT tool has also received unsolicited favorable media coverage, including articles published in the Chicago Tribune and Investment News.

54.    At least one customer has already executed a subscription agreement for the LIPPER RETIREMENT INSIGHT tool. Multiple other customers have indicated that they are ready to enter agreements.

55.    PlanTools' refusal to comply with its Post-Termination Obligations renders it impossible for Lipper to deliver the LIPPER RETIREMENT INSIGHT tool and service to its customers.

56.    Lipper's inability to deliver the LIPPER RETIREMENT INSIGHT tool is a direct consequence of PlanTools' refusal to comply with its Post Termination Obligations.

10

57.    Interruption in availability and service of the LIPPER RETIREMENT INSIGHT tool during this critical time will irreparably harm Lipper.  Lipper will be unable to provide the LIPPER RETIREMENT INSIGHT tool to customers that have already executed subscription agreements and will further be unable to enter into subscription agreements with other customers who have indicated they want the tool.  Lipper's relationships with its customers who want the LIPPER RETIREMENT INSIGHT tool will be damaged.  Moreover, its reputation and credibility in the marketplace will be tarnished if it cannot deliver a product and service that it has been marketing.  It will lose the critical momentum that the LIPPER RETIREMENT INSIGHT tool has gained in the market, thereby harming Lipper's ability to compete in offering such a product and service in the future.

58.    In addition, by refusing to turn over the source code and other materials, as the MCA and Work Statement 1 require, PlanTools is preventing Lipper from obtaining copyright registrations so as to enable it fully to protect and enforce its valuable copyrights.

***PlanTools Failure to Comply with its Reporting Obligations***

59.    PlanTools has failed to comply with its reporting obligation under the DDA and has failed to remit to Lipper any revenue-share under the DDA or MCA.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract as to PlanTools)

60.    Lipper incorporates by reference the allegations contained in Paragraphs 1 - 59.

61.    The MCA is a valid, binding, and enforceable contract.

62.    PlanTools' failure to comply with its Post-Termination Obligations constitutes a breach of contract.

63.    PlanTool's failure to comply with its reporting obligations under the DDA and failure to remit any revenue share to Lipper pursuant to the MCA constitute breach of contract.

11

64.    Lipper has lost and will continue to lose substantial sales and profits as a direct result of PlanTools' breach.

65.    PlanTools' failure to comply with its Post-Termination Obligations is also causing and will continue to cause Lipper great and irreparable injury, in an amount that cannot be presently ascertained, rendering damages inadequate to fully compensate Lipper for its losses.

## SECOND CLAIM FOR RELIEF
### (Conversion as to PlanTools)

66.    Lipper incorporates by reference the allegations contained in Paragraphs 1 - 59.

67.    Following the termination of the Agreement, PlanTools wrongfully withheld the Lipper Toolkit source code and the latest work in progress and released source code reasonably necessary to migrate the Lipper Toolkit and related services and applications from PlanTools' environment (collectively, the "Converted Property").

68.    Despite Lipper's demands, PlanTools has refused to return the Converted Property to Lipper and continues to hold such property for its own use and benefit.

69.    PlanTools' wrongful withholding of the Converted Property constitutes an intentional interference with Lipper's ownership of such property, which has deprived Lipper of the right to possess the Converted Property.

70.    PlanTools has wrongfully converted the Converted Property.

71.    By reason of the above, Lipper has sustained damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment as to McHenry Group)

72.    Lipper incorporates by reference the allegations contained in Paragraphs 1 - 59.

73.    By reason of the foregoing allegations, an actual case or controversy has arisen and exists between Lipper and McHenry Group as to the parties' rights and obligations

12

respecting McHenry Group's marketing proposal.

74.    Lipper is entitled to a declaratory judgment that it does not owe McHenry Group under the unexecuted marketing proposal.

## REQUEST FOR RELIEF

WHEREFORE, Lipper requests judgment as follows:

1.    **That the Court enter judgment in favor of Lipper** against PlanTools.

2.    That the Court preliminarily and permanently enjoin and restrain PlanTools, its owners, directors, officers, agents, servants, employees and all persons acting in concert or in participation with PlanTools:

      (a)    from noncompliance with PlanTools' Post-Termination Obligations;

      (b)    from using Lipper's copyrighted source code; and

      (c)    from conspiring with, aiding, assisting or abetting any other person or business entity from engaging in or performing any of the activities referred to in subparagraph (a) – (b) above.

3.    That the Court order PlanTools and all persons acting in concert or participation with PlanTools to deliver to Lipper each of the items required under the MCA, including without limitation, all Lipper Toolkit source code, the latest work in progress and released source code reasonably necessary to migrate the Lipper Toolkit and related services and applications from PlanTools' environment, a perpetual, non-revocable license to use any non-Lipper owned source code to the Lipper Toolkit, and a refund of $375,000.

4.    That the Court order PlanTools to file with the Court and to serve on counsel for Lipper, within thirty (30) days after the entry and service on PlanTools of the Court's Order, a report in writing and under oath setting forth in detail the manner and form in which PlanTools has complied with the foregoing order provisions.

5.    That the Court order an accounting and render judgment against PlanTools in an

13

amount equal to Lipper's damages with interest and PlanTools' profits on account of PlanTools' unauthorized use of Lipper's copyrighted source code and other materials.

6.      That the Court order an accounting of all sums due Lipper under the DDA and MCA.

7.      That the Court enter judgment in favor of Lipper for all damages sustained on account of PlanTools' breach of the Agreement including pre and post-judgment interest.

8.      That the Court enter a declaratory judgment that Lipper is not liable to McHenry Group for any amount.

9.      That Lipper be awarded its attorneys' fees and costs incurred in this action.

10.     For such other and further relief as the Court deems just and equitable.

Dated: New York, New York
       July 13, 2007

**KILPATRICK STOCKTON LLP**

Joseph Petersen (JP-9071)
Christopher S. Lick (CL-1391)
31 West 52nd Street
14th Floor
New York , NY 10019
(212) 775-8700

Attorneys for Plaintiff Lipper Inc.

14

Of Counsel:

Judith A. Powell (*Pro Hac Vice* Application To Be Submitted)
Tywanda H. Lord (*Pro Hac Vice* Application To Be Submitted)
KILPATRICK STOCKTON LLP
1100 Peachtree Street Suite 2800
Atlanta, Georgia  30309-4530
(404) 815-6500

USADMIN 9222396.5

EXHIBIT 1



## DATA DISTRIBUTION VENDOR AGREEMENT

This Data Distribution Agreement is entered into as of ⟋ August 2006 (the "Effective Date") between PlanTools, LLC., a Delaware Limited Liability Company with its principal place of business at 2200 Powell Street, Suite 610, Emeryville, CA 94608 ("PlanTools"), and Lipper, Inc., a Colorado corporation with its principal place of business at The Reuters Building, 3 Times Square, New York, NY 10036 ("Licensor").

WHEREAS, Licensor has at considerable expense developed and owns all proprietary rights to the Lipper Data described in Schedule 1 (collectively, the "Lipper Data"), which contain business and financial information that Licensor regularly maintains and periodically updates and enhances (the "Information");

WHEREAS, PlanTools and/or its parent company, the McHenry Group, is the owner or licensee (as applicable), developer and sole provider of certain proprietary software applications (specifically, the "PlanTools Risk Management System") as described in Schedule 1 hereto (referred to throughout this Agreement as the "PlanTools Service");

WHEREAS, PlanTools wishes to obtain a license to make the Lipper Data available via the PlanTools Service; and

WHEREAS, Licensor wishes to grant to PlanTools a license to make the Lipper Data available via the PlanTools Service;

NOW, THEREFORE, in consideration of the mutual covenants and obligations contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Licensor and PlanTools do hereby agree as follows:

## ARTICLE I
### License to Distribute Lipper Data

**SECTION 1.01.** Licensor will provide PlanTools with access to the Lipper Data, in accordance with all of the terms and conditions of this Agreement.

**SECTION 1.02.** Subject to the terms and conditions of this Agreement, Licensor grants to PlanTools a non-exclusive, non-transferable right during the term of this Agreement to use the Lipper Data in the United States and Canada by (a) making the Lipper Data available to Clients (as defined in Section 4.01 herein) as part of the PlanTools Service; and (b) promoting and marketing the availability of the Lipper Data to Clients. Except as set out in this Agreement, no other copying, display or distribution of the Information is permitted without the prior written consent of the Licensor. For the avoidance of doubt, PlanTools' license granted hereunder is expressly limited to United States and Canada.

SECTION 1.03. Licensor reserves to itself complete editorial freedom in the form and content of the Information and may alter the same from time to time although Licensor agrees that it shall not alter in any material respect the Information without the consent of PlanTools.

SECTION 1.04. Licensor may cancel all or part of the Lipper Data if: (a) the Lipper Data becomes the subject of a claim that it infringes the rights of any third person or that Licensor otherwise does not have the right to permit others to use it; (b) the Lipper Data becomes illegal or contrary to any applicable law, regulations, rules or orders of any government, administrative authority or court ("Laws"); or (c) Licensor for any reason discontinues the Lipper Data as a Licensor product offering.

### ARTICLE II
### Lipper Data Warranties and Delivery

SECTION 2.01. Licensor represents, warrants and covenants as follows:

(a) Licensor has and shall have during the term of this Agreement all rights necessary to deliver the Lipper Data and the Information to PlanTools and to grant PlanTools all rights granted to this Agreement;

(b) Licensor will, at its own expense, make available the Lipper Data to PlanTools on the commencement of this Agreement as set out in Schedule 1 by means of Licensor's standard FTP site, which may be accessed simultaneously by any and each of Licensor's subscribers which are licensed to receive such Information (the "Licensor FTP Site") and in accordance with the terms and conditions of this Agreement;

(c) Licensor will, at its own expense, update the Information in accordance with its normal procedures and make available each update to PlanTools by means of the Licensor FTP Site;

(d) Licensor has obtained and will obtain the Information from sources it considers reliable and will run reasonable control checks on the Information, but will not be subject to liability for the truth or accuracy of the Information conveyed or for its completeness or for errors or mistakes made by human or machine. Licensor shall take reasonable steps to control the on-going quality of the Information. Application of such quality control procedures constitutes the full extent of warranty with regard to the Information provided. Licensor reserves the right to revise the Information and to make changes in content without obligation to notify any person or organization of such changes. NO WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WILL APPLY TO THE INFORMATION PROVIDED EXCEPT AS SET FORTH ABOVE.

**ARTICLE III**
**Use of Lipper Data by PlanTools**

**SECTION 3.01.**  PlanTools will include the Lipper Data in the PlanTools Service and will use its best efforts to update the Information promptly after updates are received, and provide software or other means to enable authorized Clients to access the Information.  Except as provided in this Agreement, no other storage of the Information by PlanTools is permitted.

**SECTION 3.02.**  PlanTools agrees that the Lipper Data consists of factual information gathered, selected, analyzed, and arranged by Licensor at considerable expense to it and by the application of methods of selection and judgment unique to Licensor and that Licensor has ownership, copyright, and trade secret property rights and other proprietary and intellectual property rights in the Lipper Data.  Therefore, PlanTools agrees not to copy, alter, edit or modify the Lipper Data or any part thereof or to make the Lipper Data, or any part thereof, available to others except as necessary to enable PlanTools to perform its obligations in accordance with the terms of this Agreement.

**SECTION 3.03.**  Unless agreed upon otherwise by Licensor in writing, PlanTools shall include Licensor's name, copyright and/or logo in any listing of PlanTools's data suppliers and application documentation; provided however that PlanTools will not be obligated to display Licensor's logo during actual searches or downloads of Information on the data or in any way which it does not do so with respect to the majority of its other data providers and that in such circumstances it shall be sufficient to cite Licensor as the source of the Information.

**SECTION 3.04.**  PlanTools will not remove or conceal any copyright or other proprietary notice or any credit line or date line included in the Lipper Data. Unless otherwise agreed to in writing by Licensor, PlanTools will insert on any display that contains any Information, and in close proximity to the Information, the following notice:  *"Copyright 2006 © Reuters.  All rights reserved.  Any copying, republication or redistribution of Information, including by caching, framing or similar means, is expressly prohibited without the prior written consent of Lipper. Lipper shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon."* Licensor reserves the right to alter such notice from time to time.  Where reasonably requested by Licensor, PlanTools shall ensure that any disclaimer provided by Licensor is incorporated into the PlanTools Service so that it is clearly accessible and visible to end users.

**SECTION 3.05.**  Licensor will provide PlanTools with a graphics file containing the Licensor logo. PlanTools shall insert such graphic on any key or material page containing any Information in the exact form, and in the exact size that it is provided by Licensor unless otherwise agreed between the parties. Licensor reserves the right to replace this logo with another logo.  The parties shall mutually agree on the positioning of the Licensor logo on the PlanTools Service provided that the PlanTools shall make reasonable efforts to ensure that the Licensor logo appears in the top half of a screen or page.

**SECTION 3.06.**  Except for PlanTools' own logo, PlanTools may not co-brand pages containing any Information without the prior consent of Licensor. For purposes

3

of this Section 3.06, to "co-brand" means to display the name, logo, trademark or other identifier of another person (except for Licensor) in such a manner as to give the viewer the impression that such other person is a publisher or distributor of the content. This Section is not intended to prohibit conventional advertising or sponsorships that do not create such impression.

SECTION 3.07.  PlanTools will not include any advertising on pages containing Information that falsely implies that the advertiser is associated with Licensor or Information. Except as set out in this Agreement, PlanTools may not use the Licensor name or trademarks without Licensor's prior written consent.

SECTION 3.08  PlanTools shall have the right to re-format the data provided by Licensor in a manner consistent with other PlanTools data provided that PlanTools shall not rewrite or otherwise use any portion of the Information to create original content for publication except with the prior written consent of the Licensor.

SECTION 3.09.  The Lipper Data, names and trademarks of Licensor are the valuable intellectual property of Licensor. All rights with respect to the Lipper Data, names and trademarks whether now existing or which may hereafter come into existence, which are not expressly granted to PlanTools herein are reserved to Licensor. Any goodwill generated through PlanTools' use of the Licensor name and trademarks shall inure solely to the benefit of Licensor.

SECTION 3.10.  The PlanTools Service, names and trademarks of PlanTools are the valuable intellectual property of PlanTools. All rights with respect to the PlanTools Service, names and trademarks whether now existing or which may hereafter come into existence, which are not expressly granted to Licensor herein are reserved to PlanTools. Any goodwill generated through Licensor's use of the PlanTools name and trademarks shall inure solely to the benefit of PlanTools.

SECTION 3.11.  Each party will promptly notify the other of any infringement or threatened infringement of any right of the other party of which such party becomes aware and will provide reasonable assistance to the other party in connection therewith.

SECTION 3.12.  During the term hereof, PlanTools hereby grants to Licensor a royalty free license to use one copy of the PlanTools Service for Licensor's internal use and in order to evaluate the compliance of the PlanTools Service with this Agreement. PlanTools will provide the Licensor with the necessary software and support to install and use the PlanTools Service during the term hereof.

SECTION 3.13.  PlanTools hereby grants to Licensor a royalty free license to use PlanTools' logo attached hereto as Exhibit B in connection with the promotion of the Lipper Data in the PlanTools Service.

## ARTICLE IV
### Licensor's Arrangements with Clients

4

SECTION 4.01.  PlanTools shall market and promote the availability of the Lipper Data within the PlanTools Service or through the PlanTools FTP site (as set forth in Section 1.02 herein) provided that (i) it provides accurate information concerning the Lipper Data and does not engage in puffery (ii) accurately communicates information about the Lipper Data and (iii) notifies Licensor of each sales lead regarding a prospective client of the Lipper Data.

SECTION 4.02.  With respect to each prospective client, PlanTools shall:

    (i)    provide to such prospective client with an addendum to PlanTools' client agreement (the "Client Agreement") setting out terms and conditions in respect of the Lipper Data substantially in the form attached hereto as Exhibit A (the "Data Addendum");

    (ii)    promptly provide Licensor with copies of each Client Agreement executed by each prospective client;

    (iii)    ensure that each Client receives only the number of user accesses listed in the applicable Client Agreement.

Client means any individual or entity that has executed a Client Agreement. For the avoidance of doubt, a "Client" means a single corporation or entity and does not include parents, subsidiaries, affiliates or other business partners of a corporation or other entity.  PlanTools shall not redistribute the Lipper Data to a Client's subsidiary, parent or affiliate without Licensor's prior written consent.

SECTION 4.03.  Except as provided in Article 5, unless and until the prospective client has agreed in writing to the applicable Client Agreement and has agreed to pay the agreed prices, PlanTools shall not make available the Lipper Data, or any portion of the Information to any such Client or prospective client; provided however, PlanTools may make the Database available for Trial Use (as defined hereafter). PlanTools shall make no representations, warranties or commitments in respect of the Database except as set out in this Agreement. PlanTools will use commercially reasonable efforts promptly to bring to Licensor's attention any reports, returns or information received by it which is likely to be of material interest, use or benefit to Licensor in respect of the Database, including, as appropriate, referring Client requests and queries of which PlanTools is aware promptly to Licensor.

SECTION 4.04.  Except as expressly set forth herein and except for Client Agreements properly obtained by PlanTools, PlanTools agrees and acknowledges that it shall not incur any liability on behalf of Licensor or accept any order to make any binding contract for the Database.

SECTION 4.05.  PlanTools shall remit to Licensor the fees set forth in Schedule 2 which is hereby incorporated by reference herein.

**SECTION 4.06.** Any amounts to be paid by PlanTools in accordance with this Article 4 shall be in US Dollars to a bank account specified by Licensor from time to time.

**SECTION 4.07.** In the event of a cancellation of the agreement between PlanTools and one of its Clients, PlanTools shall notify Licensor of the cancellation within 10 business days from the date of such cancellation. With respect to each Client, PlanTools shall pay to Licensor all fees through the date of such cancellation, except that if PlanTools fails to give Licensor timely notice of a cancellation by a Client, cancellation shall be deemed effective as of the date Licensor receives notification of the cancellation and PlanTools shall pay all fees through the date of such notification.

**SECTION 4.08.** Commencing with the first calendar quarter ending after the Effective Date and thereafter within ten days after the end of each calendar quarter, PlanTools shall provide to Licensor with a report setting forth:

(A)    the name and details of each Client and the Client's subscription to PlanTools Service and the number of user accesses issued to the Client;

(B)    a statement of the fees collected from each Client on account of the Lipper Data;

(C)    a statement identifying the name of each Client who has cancelled its subscription to the PlanTools Service and the month in which such cancellation took effect;

(D)    a statement of the Fees, owed to Lipper as calculated in accordance with this Agreement.

**SECTION 4.09.** PlanTools shall remit to Lipper the Fees at the same time as the Quarterly Report. Licensor shall have the right to require a revised calculation and resubmission of Fees in the event that, in Licensor's reasonable belief, there are errors in the Quarterly Report.

**SECTION 4.10.** PlanTools shall, for a minimum of 3 years or the minimum retention period required for applicable tax purposes (if longer) maintain a complete and accurate record of all Clients and all Fees paid or payable in respect of the Lipper Data. Such records shall be maintained in accordance with good business and licensing practices. Licensor shall have the right, at its expense (using its agents and representatives where appropriate) to audit PlanTools for the sole purpose of verifying compliance with this Agreement and to ascertain any unlicensed use of the Database permitted by PlanTools; provided that (i) Licensor will procure that its agents comply with the confidentiality obligations in this Agreement; (ii) Client is given at least 15 days' advance notice of Licensor's intention to audit; and (iii) the audit is conducted during normal business hours and without unreasonable disruption to PlanTools or PlanTools' business. Licensor may not exercise such audit rights more than once in any 12 month period; provided that if a discrepancy of 5% or more is revealed in an audit, Licensor has the right to re-audit within 6 months. In addition, if the audit reveals that the amount which should have been paid to

Licensor exceeds by 5% or more the amount actually paid by PlanTools, PlanTools shall pay the reasonable costs of the audit incurred by Licensor in addition to the unpaid amounts. PlanTools will, on Licensor's request, certify to Licensor that PlanTools is in compliance with this Agreement.

## ARTICLE V
### PlanTools' Arrangements with Clients

**SECTION 5.01.** PlanTools will forward to its Clients and prospective clients, with Licensor being responsible for out-of-pocket expenses, any promotional material provided by Licensor in connection with the Lipper Data.

**SECTION 5.02.** PlanTools shall have sole responsibility for the collection of any payment from Clients who have entered into a Client Agreement with PlanTools for the PlanTools Service.

**SECTION 5.03.** Licensor shall have sole responsibility for providing written notice whenever it desires that PlanTools terminate access to all or part of the Lipper Data to a particular Client; provided that Licensor may only do so if Licensor determines that a Client has breached the terms of a Client Agreement and has failed to cure such breach if a cure period is available. PlanTools shall notify Licensor promptly if it learns, or has reason to believe, that the Client is in breach of the obligations under the Client Agreement. PlanTools shall terminate the Client's access to the Information promptly upon receipt of notice from Licensor.

## ARTICLE VI
### Support

**SECTION 6.01.** PlanTools shall be solely responsible for providing software support and software maintenance of the PlanTools Service to Clients. Licensor shall not be responsible for providing support and maintenance of the Database directly to Clients. Licensor shall serve as second level support and shall provide support for PlanTools inquiries only. The parties shall comply with the following procedure in responding to Client inquiries:

(i) all Client requests for technical support shall first be handled by PlanTools;

(ii) PlanTools shall make a commercially reasonable determination as to whether the Client's inquiry concerns the PlanTools Service or the Databases or both;

(iii) In the event that the Client inquiry relates solely to the Database, PlanTools shall promptly contact Licensor's Customer Support team in Denver at: +1 877.955.4773 (LipperClientServices@lipper.reuters.com) or at such other contact numbers or email address as Licensor may from time to time provide to PlanTools. Responses shall be directed to PlanTools who will then deal directly with the Client. PlanTools shall not provide its Clients with Licensor's Customer Service information described herein.

(iv) In the event that the Client inquiry concerns both the PlanTools Service and the Database, PlanTools shall be responsible for responding to and attempting to resolve

7

the Client inquiry, provided however, that the Licensor's Customer Support team described herein shall be reasonably available to PlanTools, at no cost, to assist PlanTools with PlanTools' inquiry.

       **SECTION 6.02.** The parties hereby acknowledge and agree that repeated failure by either party to provide support and maintenance with respect to its own products or services shall constitute a material breach of this Agreement entitling the other party to terminate this Agreement, provided however that the Parties shall have no liability hereunder and PlanTools shall not be entitled to terminate this Agreement unless they have fully complied with Section 6.01 herein.

### ARTICLE VII
### Force Majeure

       Neither PlanTools nor Licensor shall bear any responsibility or liability for any losses arising out of any delay in or interruption of their performance of their obligations under this Agreement due to any act of God, governmental authority, or public enemy or due to war, riot, fire, flood, civil commotion, insurrection, labor difficulty (including, without limitation, any strike or other work stoppage or slowdown) severe or adverse weather condition or other cause beyond the reasonable control of the party affected. Should any event of force majeure continue for a period of three months or more then either party may terminate this Agreement.

### ARTICLE VIII
### Term and Termination

       **SECTION 8.01.** This Agreement shall commence on the "Effective Date" and shall continue in effect for three (3) year(s). Thereafter, it shall be automatically renewed for successive one-year terms unless terminated as hereinafter provided in this Article VIII, provided that either party may terminate this Agreement by giving 120 days' prior written notice to the other party.

       **SECTION 8.02.** In the case of material breach of any of the terms of this Agreement by either party, the non-breaching party may terminate this Agreement by giving the other party 30 days' written notice if the other party shall not have corrected such material breach within such 30-day period.

       **SECTION 8.03.** Either party may terminate this Agreement immediately by giving written notice if a petition shall be filed against the other party under any provision of any bankruptcy or insolvency law or amendments thereto or if a receiver shall be appointed for the other party or any of its property and said petition or appointment shall remain unvacated for a period of 60 days, or if the other party shall file a petition under any provision of the bankruptcy or insolvency laws thereto or file any petition or action under any reorganization, insolvency or debt moratorium law or any other law or laws for the relief of or relating to debtors, or if the other party takes any corporate action to initiate any of the foregoing, or if a writ of attachment or injunction shall be issued against the other party or any of its property such that either will not be able to continue its normal operations as contemplated under the Agreement and said attachment or injunction shall not be removed, bonded or vacated within 60 days, or if the other party shall be as they mature, become

8

insolvent, however evidenced, commit an act of bankruptcy, make an assignment for the benefit of creditors, appoint a committee of creditors or liquidating agent, or make an offer of composition or bulk sale or if the other party shall be dissolved or apply for dissolution or cease to do business, other than in connection with a corporate organization.

        **SECTION 8.04.** Upon termination of this Agreement, PlanTools shall cease distributing the Lipper Data or any part thereof, and shall destroy or return to Licensor all versions and copies of the Lipper Data or any part thereof that PlanTools has in its possession or custody, and certify its compliance with Section 8.04 in writing.

        **SECTION 8.05.** Notwithstanding anything to the contrary herein, Licensor shall have the right, in its sole discretion, to terminate this Agreement in the event of a change of Control of PlanTools. For purposes of this Agreement, **"Control"** (including the terms **"Controlled by"** and **"under Common Control"**) means, with respect to the relationship between or among two or more Persons, the possession, directly or indirectly, or as trustee or executor, of the power to direct or cause the direction of the affairs or management of a Person, whether through the ownership of voting securities, as trustee or executor, by contract or otherwise, including the ownership directly or indirectly, of securities having the power to elect a majority of the board of directors or similar body governing the affairs of such Person. For the avoidance of doubt, **"Person"** means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or individual.

## ARTICLE IX
### Mutual Warranties, Limitation of Liability and Indemnity

        **SECTION 9.01.** Each party warrants to the other that (i) it has the full capacity and authority to perform its obligations pursuant to this Agreement; (ii) it has not entered into and shall not enter into any arrangement which may prevent its performance under this Agreement; and (iii) it shall comply with and shall not prevent the other from complying with all applicable laws, by laws, regulations, guidelines and requirements of any government or other competent authority and will ensure that all appropriate consents, licenses, permits and clearances have been obtained from appropriate authorities relating to its performance of its obligations.

        **SECTION 9.02.** Subject to Sections 9.04 and 9.05 and with the exception of liability falling within Section 9.07, each party's entire liability arising out of or in connection with this Agreement shall be limited to damages equal to the greater of $500,000 or the aggregate of the payments payable by PlanTools to Licensor in the one-year period immediately preceding the act or omission contributing to the breach.

        **SECTION 9.03.** Subject to Section 9.02 and save as expressly set out in this Agreement, neither party shall be liable to the other for any indirect, special or consequential loss or damage arising out of this Agreement.

        **SECTION 9.04.** Except where a claim or demand results from the negligence or willful misconduct of PlanTools, its affiliates or any officer, employee or agent of PlanTools or any of its affiliates, Licensor shall indemnify and hold harmless PlanTools,

its affiliates and any officer, employee or agent of PlanTools or any of its affiliates, against all claims or demands by and liabilities to third parties (including, without limitation, reasonable attorney's fees and expenses) arising from or in connection with (i) the Lipper Data, the Information or any part thereof, including without limitation as a result of the Lipper Data or Information containing defamatory statements, obscene or pornographic material or infringing any third party intellectual property rights or any applicable laws (ii) PlanTools' use or distribution and the use of the Lipper Data as contemplated by and in accordance with the provisions of this Agreement provided that the relevant claim does not concern Information that Licensor informed PlanTools should not be used and (iii) any claim by a Client that the Licensor unlawfully terminated access to the Lipper Data provided that the termination of the Client's access to the Lipper Data was not caused in whole or in part by PlanTools or the PlanTools Service.

       **SECTION 9.05.** Except where such claims or demands result from the negligence or willful misconduct of Licensor, its affiliates or any officer, employee or agent of Licensor or any of its affiliates, PlanTools shall indemnify and hold harmless Licensor, its affiliates and any officer, employee or agent of Licensor or any of its affiliates, against all claims or demands by and liabilities to third parties (including, without limitation, reasonable attorney's fees and expenses) arising from or in connection with the PlanTools Service including without limitation as a result of the PlanTools Service containing or making defamatory statements, obscene or pornographic material, infringement of a third party's intellectual property rights or unauthorized distribution of the Lipper Data or Information by PlanTools and any claim by a Client that PlanTools unlawfully terminated access to the PlanTools Service provided that the termination of the Client's access to the PlanTools Service was not caused in whole or in part by Licensor.

       **SECTION 9.06.** A party seeking indemnification pursuant to this Article 9 (an "Indemnified Party") from or against the assertion of any claim by a third party will give prompt notice to the party from whom indemnification is sought (the "Indemnifying Party"); provided, however, that failure to give prompt notice will not relieve the Indemnifying Party of any liability hereunder (except to the extent the Indemnifying Party has suffered actual material prejudice by such failure). The Indemnifying Party and the Indemnified Party will cooperate in the defense or prosecution of any third party claims provided that the Indemnifying Party shall have conducted such proceedings.

       **SECTION 9.07.** Nothing in this Agreement shall operate to restrict the Indemnifying Party's liability for fraud or death or personal injury resulting from its negligence or the negligence of its employees while acting in the course of their employment.

### ARTICLE X
### Confidentiality

**SECTION 10.01.** Each party agrees that all Confidential Information received by a party (**"Recipient"**) pursuant to this Agreement or which may at any time until termination of this Agreement come into the Recipient's knowledge, possession or control and which relates to this Agreement shall only be used by the Recipient for the performance of its obligations under this Agreement and shall remain confidential and shall not be disclosed to any third party except in so far as this may be required for the proper performance of the Recipient's obligations under this Agreement and then only under appropriate confidentiality provisions and previously approved in writing by the other party (**"Disclosing Party"**).

**SECTION 10.02.** For the purpose of this Agreement, **"Confidential Information"** means any and all knowledge, data and information which the Recipient may obtain in connection with this Agreement including but not limited to intellectual property, information relating to the business of the Disclosing Party, business systems, financial information, business processes, client and supplier lists, debtor lists, financial information and everything supplied to the Recipient pursuant to this Agreement whether orally or fixed in any medium or capable of visual representation in any medium.

**SECTION 10.03.** Confidential Information shall not include any information which the Recipient can show: (i) has subsequently become public knowledge (other than by act or default of the Recipient); or (ii) is received by the Recipient from a third party who has a legitimate right to disclose the same; or (iii) by documents that prior to this Agreement the information was already in the Recipient's lawful possession without obligation of confidence.

**SECTION 10.04.** Notwithstanding the provisions of Sections 10.01 and 10.02 above, the Recipient may disclose Confidential Information if the same is required to be disclosed pursuant to court or other legal process provided that the Recipient gives prompt notice to the Disclosing Party of such order or process prior to any disclosure and consults with the other party on the advisability of seeking a protective order or other means to preserve the confidential treatment of the Confidential Information.

**SECTION 10.05.** The Recipient undertakes to the Disclosing Party to take all such steps as shall from time to time be necessary to ensure compliance with the provisions of this Agreement by its employees, agents, professional advisors and subcontractors (collectively **"Agents"**) and that the Recipient shall restrict the Confidential Information to those Agents who need to have access to the Confidential Information and who are instructed and agree to disclose the Confidential Information only as allowed herein.

**SECTION 10.06.** On the written request of the Disclosing Party, or on the expiration or any earlier termination of this Agreement, the Recipient shall promptly return all copies of the Confidential Information (including any copies made by the Recipient), in whatever form or media to the Disclosing Party or, at the option and direction of the Disclosing Party shall destroy the same. The Recipient shall certify in writing to the Disclosing Party such return or destruction within ten (10) days thereafter.

11

## ARTICLE XI
## <u>Miscellaneous</u>

**SECTION 11.01.** PlanTools shall not be entitled to assign this Agreement or any of its rights hereunder or delegate any of its obligations without Licensor's prior written consent. All assignments in violation of this Clause 11.01 shall be void.

**SECTION 11.02.** Except as otherwise provided herein all notices and other communications under this Agreement shall be in writing and shall be deemed given (except as otherwise provided herein) when delivered by hand or 5 days after mailing, postage prepaid, by registered or certified mail, return receipt requested, to the below address or such other address as either party shall specify in a written notice to the other. Except for notices and communications under Article 8 and 9 herein, notices and other communication under this Agreement may also be given by electronic mail transmission and shall be deemed given upon the earlier of (i) the receipt by the sender of a non-automatic reply electronic mail from the recipient and (ii) three business days after the initial transmission.

| | |
|---|---|
| **Notice to PlanTools:** | PlanTools, LLC<br>2200 Powell Street, Suite 610<br>Emeryville, CA 94608<br>Attn: Rick Fowler<br>Phone: 800-638-8121, ext 117<br>Fax:    510-420-1732 |
| **Email Address:** | rick.fowler@mchenrygroup.com |
| **Notice to Licensor:** | **Lipper Inc**<br>The Reuters Building<br>3 Times Square<br>New York, New York 10036<br><br>Attn: Jim Weber<br>Tel:    (617) 367-4104<br>Fax:    (607) 507-8403 |
| **Email Address:** | jim.weber@lipper.reuters.com |
| **With a copy to:** | Lipper, Inc.<br>The Reuters Building<br>3 Times Square<br>New York, New York 10036<br><br>Attn.  Alexandre A. Montagu, Esq. |
| **Email Address:** | alex.montagu@lipper.reuters.com |

SECTION 11.03. No modification, amendment, supplement to or waiver of this Agreement or any of its provisions shall be binding upon PlanTools or Licensor unless made in writing and duly signed by both parties. A failure or delay of either party hereto to (i) insist upon the performance of any terms or conditions of this Agreement, or (ii) exercise any rights or privileges conferred in this Agreement shall not be construed as waiving any such terms, conditions, rights or privileges and the same shall continue and remain in full force and effect.

SECTION 11.04. In the event that any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal or unenforceable, the remaining provisions of this Agreement shall be unimpaired, and the invalid, illegal or unenforceable provision shall be replaced by a mutually acceptable provision, which, being valid legal and enforceable, comes closest to the intention of the parties underlying the invalid, illegal, or unenforceable provision.

SECTION 11.05. The terms and conditions of any and all Schedules and other attachments to this Agreement are incorporated herein by this reference and shall constitute part of this Agreement as if fully set forth herein. This Agreement constitutes the entire Agreement between the parties and supersedes all previous or contemporaneous agreements, promises, representations, whether written or oral, between the parties with respect to the subject matter hereof. Each party acknowledges that it has not relied on any oral or written representation made to it by the other party or its employees or agents and has made its own independent investigations into all relevant matters. This Section shall not apply to any fraudulent representations made by either party.

SECTION 11.06. The relationship of the parties shall be that of independent contractors. No party will represent that it has any authority to assume or create any obligation, express or implied, on behalf of any other party, or to represent any other party as agent, employee, or in any other capacity, except as specifically provided herein.

SECTION 11.07. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, excluding its choice of law rules. All disputes arising out of or in connection with this Agreement shall be finally settled by the Supreme Court of the State of New York, County of New York or the Federal District Court for the Southern District of New York. Both parties unconditionally consent to the jurisdiction of the aforementioned courts.

SECTION 11.08. The headings of the sections of this Agreement are inserted for convenience and reference only and shall in no way restrict or otherwise affect the construction of the terms or provisions hereof. Any reference to a notice shall be deemed to be to a written notice.

SECTION 11.09. Article VII, Article X, Article XI and Sections 3.02, 3.06, 3.09, 3.10, 8.04, 9.04, 9.05 of the Agreement will survive the termination or expiration of the Agreement.

13

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their duly authorized officers as of the date first above written.

PLANTOOLS LLC

By:_____

      Name: Ward M. Harris
      Title:  Managing Member
      Date:  _6_ August 2006

**LIPPER, INC:**

By:_____

      Name:
      Title:
      Date:

14

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date first above written.

PLANTOOLS LLC

By: _____

Name: Ward M. Harris
Title: Managing Member
Date: 5 August 2006

LIPPER, INC:

By: _____

Name: MICHAEL PEACE
Title: CEO
Date: 8/8/2006

14

## SCHEDULE 1
## LIPPER DATA

In accordance with the terms of this Agreement, Licensor shall on a **monthly** basis, make available to PlanTools on Licensor's FTP Site a file containing the following data (the "Lipper Data"):

Licensor's Standard LDFS Feed along with the following additional datapoints:

| Feed | LDFS Table | Data Point Name |
|---|---|---|
| ldfs | most tables | Fund Number |
| ldfs | all tables | Fund Symbol |
| ldfs | 60 | Category Name (Lipper Classification) |
| ldfs | 60 | Fund Open to New Investors |
| ldfs | 60 | Fund Common Name |
| ldfs | 60 | NASDAQ Code |
| ldfs | 30 & 35 | Cumulative Total Return  3 Months |
| ldfs | 30 & 35 | Cumulative Total Return  Year-to-date |
| ldfs | 30 & 35 | Cumulative Total Return  1 Year |
| ldfs | 30 & 35 | Percent rank of one-year returns among style-group peers. Return is not load-adjusted |
| ldfs | 30 & 35 | Annualized Total Return  3 Years |
| ldfs | 30 & 35 | Percent rank of three-year annualized returns among style-group peers. Return is not load-adjusted. |
| ldfs | 30 & 35 | Annualized Total Return  5 Years |
| ldfs | 30 & 35 | Percent rank of five-year annualized returns among style-group peers. Return is not load-adjusted |
| ldfs | 30 & 35 | Annualized Total Return 10 Years |
| ldfs | 30 & 35 | Percent rank of ten-year annualized returns among style-group peers. Return is not load-adjusted. |
| ldfs | 140 | Calendar (Year 1) Total Return |
| ldfs | 140 | Calendar (Year 2) Total Return |
| ldfs | 140 | Calendar (Year 3) Total Return |
| ldfs | 140 | Calendar (Year 4) Total Return |
| ldfs | 140 | Calendar (Year 5) Total Return |
| ldfs | 60 | Minimum Product History |
| ldfs | 60 | Manager Tenure |
| ldfs | 60 | Asset Value in Product |
| ldfs | 60 | Annual Turnover |

| Feed | LDFS Table | Data Point Name |
|------|-----------|-----------------|
| ldfs | 1060 | Lipper Leader - Total Return - 3yr |
| ldfs | 1060 | Lipper Leader - Consistent Return - 3yr |
| ldfs | 1060 | Lipper Leader - Preservation - 3yr |
| ldfs | 1060 | Lipper Leader - Tax Efficiency - 3yr |
| ldfs | 1060 | Lipper Leader - Expense - 3yr |
| ldfs | 1070 | Lipper Leader - Total Return - 5yr |
| ldfs | 1070 | Lipper Leader - Consistent Return - 5yr |
| ldfs | 1070 | Lipper Leader - Preservation - 5yr |
| ldfs | 1070 | Lipper Leader - Tax Efficiency - 5yr |
| ldfs | 1070 | Lipper Leader - Expense - 5yr |
| ldfs | 1080 | Lipper Leader - Total Return - 10yr |
| ldfs | 1080 | Lipper Leader - Consistent Return - 10yr |
| ldfs | 1080 | Lipper Leader - Preservation - 10yr |
| ldfs | 1080 | Lipper Leader - Tax Efficiency - 10yr |
| ldfs | 1080 | Lipper Leader - Expense - 10yr |
| ldfs | 1090 | Lipper Leader - Total Return - Overall |
| ldfs | 1090 | Lipper Leader - Consistent Return - Overall |
| ldfs | 1090 | Lipper Leader - Preservation - Overall |
| ldfs | 1090 | Lipper Leader - Tax Efficiency - Overall |
| ldfs | 1090 | Lipper Leader - Expense - Overall |
| lana | lana | Standard Deviation - 12 Month |
| lana | lana | Standard Deviation 1-Year Ranking |
| lana | lana | Standard Deviation - 36 Month Annualized |
| lana | lana | Standard Deviation 3-Year Ranking |
| lana | lana | Standard Deviation - 60 Month Annualized |
| lana | lana | Standard Deviation 5-Year Ranking |
| lana | lana | Standard Deviation - 120 Month Annualized |
| lana | lana | Standard Deviation 10-Year Ranking |
| lana | lana | Sharpe Ratio – 3 year |
| lana | lana | Sharpe Ratio Ranking - 3 year |
| lana | lana | Expense Ratio |
| lana | lana | Expense Ratio Ranking |
| lana** | lana** | Alpha – 3 year |
| lana** | lana** | Alpha Ranking - 3 year |
| lana** | lana** | Beta – 3 year |
| lana** | lana** | Beta Ranking - 3 year |
| lana** | lana** | R2 (Coefficient of Determination) - 3 year |
| lana** | lana** | Treynor Ratio – 3 year |
| **Feed** | **LDFS Table** | **Data Point Name** |
| lana** | lana** | Treynor Ratio Ranking - 3 year |
| lana** | lana** | Information Ratio – 3 year |

16

lana**   lana**   Tracking Error – 3 year

## PLANTOOLS SERVICE

**PlanTools Risk Management System (the "PTRMS")** is a web-based fiduciary risk management and reporting tool that provides the ability to create a customized Investment Policy Statement ("IPS"). PTRMS creates a number of objective assessments of plan performance against plan monitoring standards or plan performance measures for retirement channel professionals (including but not limited to plan providers, third party administrators, advisors, plan consultants, etc) and plan sponsors.

## SCHEDULE 2
### FEES

In consideration of the license and rights granted to PlanTools under this Agreement, PlanTools shall pay Licensor $25.00 per month on account of each user within the Client's organization that has access to the Lipper Data via the PlanTools Service (the "**Fees**").

The Parties agree and acknowledge that Licensor reserves the right to increase the Fees after the Term. Licensor will notify PlanTools of any such increase prior to implementation of such change and if the Fee increase is 5% or more per annum, PlanTools shall have the right to terminate this Agreement as of the date of implementation of the fee increase.